# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                              Civil No. 97-0560 JP/WWD
                                     Cr. 92-373 JP

LORENZO CHAVEZ,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1.  THIS MATTER comes before the Court following an evidentiary hearing held on January 27, 1998.  Defendant, who has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence with this Court, was represented at the hearing by retained counsel.

Background and Procedural History

    2.  In April, 1992, Mr. Chavez entered a plea of guilty to an indictment charging him with cocaine possession and distribution.  He has served his sixty-five months term of imprisonment and is currently serving the four-year term of supervised release.  Defendant is a resident alien in the United States from Mexico and now faces deportation.  He claims that his plea was involuntary because he was misled by information regarding deportation consequences which was given to him by Mr. Leroy Duarte, his attorney at his criminal proceeding, and upon which he relied in accepting the plea.

    3.  In both my Proposed Findings and Recommended Disposition, filed August 12, 1997,

and the Amended Proposed Findings and Recommended Disposition, filed September 30, 1997, I recommended that defendant's petition be denied.[1]  The hearing related to the present findings was limited to the sole issue of Mr. Chavez's claim of ineffectiveness of counsel in allegedly misinforming and misleading defendant of the deportation consequences of his plea.

Legal Standard

4. In order to prevail on his claim of ineffective assistance of counsel, Mr. Chavez must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984); accord, Rogers v. United States, 91 F.3d 1388, 1391 (10th Cir. 1996).  A plea may be involuntary if the attorney "materially misinforms the defendant of the consequences of the plea."  United States v. Rhodes, 913 F.2d 839, 843 (10th Cir. 1990), cert. den., 498 U.S. 1122 (1991).

5. Here, defendant here does not appear to allege that counsel was ineffective in failing to inform him about deportation consequences.[2]  Instead, defendant alleges that he relied on counsel's information concerning deportation and accepted a plea, giving up the opportunity to pursue a motion to suppress which was pending in his criminal case.  He alleges that had he

---

[1]  The amended findings examined in considerable detail the various theories advanced by plaintiff, including ineffective assistance of counsel.

[2]  Case law from the majority of circuits views deportation consequences as a collateral consequence to a plea, and thus a failure to give this information to a defendant does not constitute ineffective assistance of counsel.  See United States v. Aragon, unpubl. op., 1991 WL 65269, *1 (10th Cir. 1991) (citing Santos v. Kolb, 880 F.2d 941, 945 (7th Cir. 1989), cert. denied, 110 S.Ct. 873 (1990)) (citations to 4th and 11th Circuits omitted) (failure by counsel to inform defendant of the likely deportation consequences arising out of his guilty plea in the criminal case would not constitute ineffective assistance of counsel);  United States v. Quinn, 836 F.2d 654, 655 (1st Cir. 1988) (deportation in context of ineffective assistance of counsel is generally regarded as a collateral consequence only, i.e., legally irrelevant to a guilty plea) (omitting citations to 1st, 2d, 5th, 9th and D.C. Circuit cases).

known that deportation was mandatory, he would have taken his chances at trial.  Based on the

testimony given at the hearing by Mr. Chavez as well as Mr. Duarte, there is no dispute of fact

concerning what Mr. Duarte specifically told Mr. Chavez. The issue becomes a purely legal one,

in whether Mr. Duarte's statements to defendant concerning deportation rise to the level of

material misrepresentation or misinformation.

## FINDINGS OF FACT

6.   Mr. Chavez first discussed a plea agreement with his counsel in mid-March 1992 when

Mr. Duarte dropped in to see defendant at the Santa Fe jail, where Mr. Chavez had been in

custody since his arrest in December 1991.  Defendant had a short amount of time to decide

whether to accept the plea, which would allow a sentencing range of 65 to 72 months instead of

78 months or more.[3]  Mr. Chavez realized that, in accepting the plea, he would be giving up

pursuing his motion to suppress, which Mr. Duarte felt had some merit, as well as a trial.

Deportation consequences were not part of the plea negotiations or agreement.[4]

7.   Deportation was not discussed at that meeting.  However, defendant brought up the

subject at an earlier time.  Mr. Duarte had told defendant that he did not know what the

consequences would be and that he would have to deal with it "at a later date."  Counsel also

advised defendant that he should contact an immigration attorney "when the time came."

---

[3]  The government had evidence of a greater quantity of drugs, which would have meant a
steeper sentence for Mr. Chavez.

[4]  Nor would this issue have been properly under the district court's jurisdiction to
determine.  United States v. Phommachanh, 91 F.3d 1383, 1386 (10th Cir. 1996) (initial
determination of whether an alien is subject to deportation under 8 U.S.C. § 1251 is part of a
collateral proceeding falling outside the jurisdiction of the district court).

8.   Although Mr. Chavez thought that he would not be deported because he was a legal resident of this country, he was never told by counsel that he would *not* be deported.  Defendant did not contact an immigration attorney before accepting the plea.  He knew that there might be deportation consequences later, but was not definite about what they were.  Defendant was never precluded from contacting an immigration attorney either before accepting the plea or during his incarceration.

9.   Mr. Duarte was not an immigration lawyer, and had handled only one immigration case as co-counsel with another attorney who regularly handled this type of case.

10.   Mr. Chavez was first contacted by Immigration and Naturalization Services ("INS") in October 1992, while he was still serving his sentence and after he was transferred from Santa Fe to the federal correctional facility in La Tuna.[5]  At this point, defendant knew he was facing possible deportation, but understood that he might be eligible for a "212(c)" waiver, so that deportation was not mandatory.  He did not contact an immigration attorney at this time.  He became aware that deportation was mandatory when he first contacted an immigration attorney in 1996.[6]

## CONCLUSIONS OF LAW

11.   When he entered his plea, Mr. Chavez understood its consequences.  He understood

_____

[5]  There is evidence by Mr. Chavez' testimony that INS responded to a letter defendant sent, stating that the deportation issue would be dealt with when he "got out."

[6]  In the interim between 1992 and 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L.No. 104-208, 110 Stat. 3009 (codified as amended at 8 U.S.C. § 1229b (1996)).  The Act eliminates deportation waivers such as the 212(c) waiver referred to by the defendant (8 U.S.C. § 1182(c)), which was repealed by the 1996 amendments.  See 304(a)(3), 8 U.S.C. § 1229b.

that he was being sentenced to less time in exchange for giving up certain rights he would have had if his case had gone to trial, including going forward with his motion to suppress.  Disposition of the deportation issue was not part of the plea agreement, regardless of whether at the time defendant relied on a hope or possibility that he would ultimately not be deported.  See Varela v. Kaiser, 976 F.2d 1357 (10th Cir. 1992) (actual knowledge of consequences that are collateral to a guilty plea [such as deportation], is not a prerequisite to entry of a knowing and intelligent plea).

12.   Claims of ineffective assistance of counsel are not to be judged by the wisdom of hindsight.  Strickland v. Washington, 466 U.S. 668, 689 (1984).  Mr. Duarte's statements to defendant were accurate, in that he admitted he did not have the knowledge that an immigration attorney would have (particularly when waivers were still available in certain circumstances), and also in telling defendant that it was an issue to be taken up at a "later time."  His statements were within the range of competence demanded of attorneys in criminal cases.

13.   Mr. Chavez' reliance on these statements did not result from any material misrepresentation or erroneous information by counsel, e.g., actively misrepresenting to defendant that he would not be deported.  Cmp.United States v. Parrino, 212 F.2d 919 (2d Cir. 1954) (validity of guilty plea affected by affirmative misrepresentation by accused's attorney that defendant would not be deported);  United States v. Russell, 686 F.2d 35, 37 (D.C.Cir. 1982) (prosecution made a clear misstatement of the law, stating that defendant was not subject to deportation if he pled to a misdemeanor instead of a felony).  Thus, defendant has failed to demonstrate that Mr. Duarte's performance was constitutionally inadequate.

14.   Failure to make the required showing of *either* deficient performance or sufficient prejudice defeats Mr. Chavez' ineffectiveness claim.  <u>Miles v. Dorsey</u>, 61 F.3d 1459, 1475 (10th Cir. 1995) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 700 (1984)).

## Recommendation

I recommend that defendant's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence with this Court, be **denied**, and that this cause be dismissed with prejudice in its entirety. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

UNITED STATES MAGISTRATE JUDGE